The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated. Welcome to the Fourth Circuit. We have three cases we're going to hear this morning. We're going to start out with the Philip Randolph Institute v. North Carolina State Board. And we will hear from the appellate's attorneys first. Good morning, Your Honors, and may it please the Court. My name is Terrence Steed from the North Carolina Department of Justice, and I represent the North Carolina State Board of Elections, its members, and its executive director in this action. I apologize in advance if I have to ask you to repeat questions. I've got a little bit of a sickness, sinus thing going on that's affecting me. It's been a long six months. And I want to thank you for your hospitality. It's my first time here. The hospitality downstairs, a quiet place to relax before we came up for argument, was very much appreciated. We'll keep that in mind when we come to shake your hands. I noticed that the Purell is on the table. I will be diligent. I will be addressing mootness and any questions the panel may have regarding equal protection. My colleague, Ms. O'Brien, will be addressing due process. Plaintiffs brought this action because the challenge statute lacks a mens rea. Such either a simple case with fairly straightforward facts. I mean, we could spend time talking about discriminatory intent back in when it was enacted, the whole bit. But it really comes down to you've got a statute where admittedly it did have that effect at one point. Your claim is that that Sienta amendment to it has changed it such that it no longer has that intent there. Is that correct? That the Sienta adding the so-called new law or the amended law has cured it. Is that basically the intention here? As far as equal protection goes, Your Honor, I believe that's accurate. But I also think it's important to note that plaintiffs haven't challenged the new law. Once it was amended, there's been. I'm not talking about the new law. I know the injunction on it is going to the old law. So that's what I'm getting at with this point is that, you know, I'll give you an example. Some years ago I had a case which was the Supreme Court of North Carolina. And it involved a statute that essentially moved the charge of statutory rape from 12 to 13. And unfortunately for the prosecutors, they had charged under the 12th year. All it did was change 12 to 13. The problem was the legislature had actually repealed the earlier statute, and they charged that statute. And therefore they charged them with a crime that didn't exist. You didn't do that here. Didn't repeal the old law, so to speak. Instead, just amended it. Now, if this had just been amended it, I'll probably ask your other side, if it had just been repealed and then you enacted this law with the scienti, I don't know if they'd be here with an equal protection challenge. And, you know, this question is about the due process. Does that follow? I understand what Your Honor is saying. I would point out that the General Assembly is the party that enacted the bill and made it effective as of January 1st, 2024. Do you understand what I'm asking? I'm talking about what the General Assembly did. If it had simply repealed that old law that admittedly has some serious problems, but it sought to amend it by changing, adding this into a requirement, taking out, you know, just the general business that doesn't matter who it is, it just happens, but add this into a requirement. And the contention is that's, I guess, a cure. But if you had repealed the old one, what this injunction seems to be going to, at least when I look at Judge Biggs' order, is really just going to the previous law. Right? That's what you say. You wouldn't have a problem with the previous law if it had been repealed. And your contention is, well, it's not going to be enforced anyway. Is that true? There's no evidence in the record that it would be enforced. Can I ask why you're here then? I mean, I've just never seen a case like this where the judge enjoins an obsolete law. Why do you care? Why are you here defending that law if you don't plan to enforce it? Well, there's important principles of mootness involved in this case. It's great that you're standing up for mootness, but I just literally don't understand why you're— I want to hear those important principles of mootness that goes to Judge Harris' question then. Thank you, Your Honor. My point isn't to be flippant about mootness or anything like that. I didn't take you to be flippant, but I'm genuinely curious as to how you would define the state's interest in allowing an obsolete statute to not be enjoined. When our office defends statutes, what is frequently called upon to do, it is not uncommon, just as it is in Virginia and all the other states in the circuit and across the country, that the General Assembly, during the pendency of that litigation, might step in and amend the law to correct what the plaintiffs are concerned about. But this is unusual that—I mean, I've never seen anything like this, and I couldn't find anything going back in the district court about the effect of the amendment on the old law. Everyone seems to be assuming the old law can still be applied retroactively, but why didn't the new one repeal it by implication? I just—what is going on here? North Carolina has two versions of the exact same law on the books, but one of them has scienter and one doesn't? I think that is an accurate reading of the way that the statute was written as enacted, since it has an effective date as of January 1, 2010. I understand it doesn't become effective until 24. What I don't understand is why, starting on January 1, 24, there are now two versions of the same law. Why doesn't the old one go away? And I have looked into this under North Carolina law. It seems like it might turn on whether it's a clarifying amendment or an altering amendment, whether this is a criminal law, which it is, and I'm getting—I feel like I have— this whole case turns on the premise that this old law can be enforced, even though the state has disclaimed any interest in enforcing it. That's the whole reason we're here, and nobody has explained to me under North Carolina law how this works. Candidly, Your Honor, I am not sure how it would work under North Carolina law, and that's not an issue I was prepared for. If it would aid the court, we'd be happy to add supplemental briefing on that specific issue. I don't understand at all what you're arguing here. When you say you don't understand how it operates under North Carolina law, you're representing the state of North Carolina. We expect you to know that. Here's the problem. You've got a district court judge that says, okay, you can't enforce the old law. You're here to say you want to talk about mootness. A district court's opinion is not going to be of any precedential value or anything. Basically, the remedy is you just won't enforce the old law. What Judge Harris is going at is why are you here? Because if you get an opinion from this court, then it would become precedent and it would become stare decisis. Look what you risk here. Why do that? It seems to me, and I think you follow where we're going, and I understand your job. I understand what you're doing. You're just representing your client under these circumstances, but there are instances where the outcome of it you probably agree. The problem is the new law, you call it new law, but I'm telling you all it is is an amendment of the old law. That's all it is. But we'll call it new law for shortness. It's not retroactive. So when it's not retroactive, you've got the so-called old law there and the new law. As Judge Harris says, that's what it appears in North Carolina, and you've agreed. There seems to be two laws here, one of which the district court judge says you can't enforce the old law. Is that not reasonable, what the district court judge did? I understand your point, Your Honor. I would note that while mootness is the strongest argument from my point of view, we didn't just appeal mootness, the issue of mootness. We also appealed the findings on arbitrary enforcement and the due process claim that touched upon prosecutorial discretion. So there isn't the only interest involved as mootness. There's also the interest of the DA defendants who Ms. O'Brien represents. You appeal for a good statement of the law. My point to you is that's a district court decision. The outcome and the result is there. It's that case and that case only. You bring it here, then when we issue an opinion, it becomes stardecis. It becomes precedential. Why in the world would you do that? Because it's our opinion that Your Honor should reverse that opinion. I understand your opinion, but you do understand that opinions can go both ways, and there's a reason. Unless the other side is totally frivolous, we dismiss things that you could just claim you're going to win. So every side can have a side to it. I'm just saying why do that when the result is what it is? I understand, Your Honor. We had our reasons for appealing and coming to this court. What are those reasons? Explain them. We disagree with them. Explain them again. Okay. I will be happy to do that, Your Honor. Plaintiffs brought this action because the challenge statute lacked a mens rea, and this really gets to impeding their ability to get out the vote. And when the law was amended to add the mens rea they asked for, those claims became moot. Our argument about mootness isn't that an individual who could potentially be prosecuted under this law wouldn't be able to continue this claim. Our argument is that these plaintiffs, organizational plaintiffs, who stated throughout this case that their interest is educating prospective voters for future elections, their interest became moot. They did not add individual plaintiffs that could potentially be prosecuted. Those are not part of the people who brought this claim. So when we're talking about mootness in this context, it's very specifically narrowed down to their interest, and they need to maintain a personal stake in the outcome, a concrete, legally cognizable interest. And it can't be maintained by speculation. So you're fighting something well beyond the question of whether these individuals who could, an individual could be prosecuted under statute. You are getting more to what the role of the plaintiffs are here and what they maintain, that this has a chilling effect and those kinds. You want us to write something to say you are correct on that at the end of the day, but all I'm saying is it only applies just to this case if it's the district court. What I'm saying to you is you're bringing it here. I'm not saying we're going one way or the other on it, but there are times that you well know if you can agree that this old statute, forget the motives and what they say it's going to be, if you have the new one, you say you can keep. Everybody seems to say the new one's okay. At least it seems to say that. They may have a different opinion on it. And you have that. But you want to bring this matter to this court because you want to talk about what they say happens as an effect of this. Your Honor, I want to be clear. This isn't defendants interpreting what we think plaintiffs' cognizable interest is. This is their own language throughout their filings. In this case, all the way through summary judgment, they have referred to this as the risk of criminal prosecution of prospective voters under the strict liability law. That has rendered it impossible for plaintiffs to continue their efforts to engage in voter registration. That's from the amended complaint. The preliminary injunction motion that said that absent injunctive relief, plaintiffs may not be able to mobilize voters with criminal convictions to vote because the pervasive fear of inadvertently violating the strict liability law. But, counsel, as I understand it, what they're saying is that as long as the state is running around prosecuting people for inadvertent mistakes from before 2024, they're still going to have to be out there reassuring everybody, yeah, yeah, they're doing it, but only going backwards, not going forwards. People will be confused by this. I mean, it is confusing. I can't understand it, how there are these two different shadow versions of the law in effect at the same time. Your Honor, that is the interest they're now using now. That is not the interest that they brought this. Who cares? This is a mootness question, right? So now they have to show that they still have, in light of this recent development, they still have a concrete interest. They're allowed to explain what that interest is. Absolutely. And the concrete is the important part because it can't rely on speculation. And it's important to note that. But which part of it is speculative? The part of it that's speculative is how we get from the will someone have actually violated this, will all the way to where they are at the end saying that they're confused voters. But I think we have to give them the first step, right? The first step is that there will be prosecutions under this old law. And, again, if there will not be prosecutions under the old law, I truly don't understand why you're here. So I think it is fair to start with the proposition that, given that you are hell-bent on leaving alive this obsolete law, it must be because there could be prosecutions under it. So that's step one. Now, there are honest mistake prosecutions happening. At the same time that they are trying to persuade people, you can't be prosecuted for an honest mistake. That seems confusing to me. So which part of this is speculative? Your Honor, my time has run out. May I continue to?  Thank you very much. So, first of all, the assumed premise that these prosecutions can still occur is true because there is no statute of limitations for felonies in North Carolina. And, as we've discussed, the old law would still apply retroactively. I'm not persuaded, but I do understand that that is the operating assumption. Right. So that is the first step. But beyond that, every voter, the record contains no evidence that a prosecution has happened since before they brought the claim. They brought the claim and cited the 16 prosecutions that were occurring, none of which resulted in a conviction under this law. So in order to get from that starting point to where their interest is, there has to be a district attorney somewhere in the state that must decide to prosecute a violation despite a voter not knowing they were still an active felon. And it's important to talk about whether they knew or not because, while I understand the old law doesn't have a sainter, the DAs requested, and it's in our record, the DAs requested that the process that happens with prisons and throughout their interaction with state government make sure that these people know what their rights are and when they're restored. So every single person who's released from prison goes into the community supervision program. And part of that program, the first thing they do, is they get a form that explains to them they've lost their voting rights. So the idea that we are going to find some hypothetical person out there that doesn't know, did not know, that doesn't have evidence of their knowledge that they were not supposed to vote is highly speculative. On top of that, the- Well, but you also have the question of whether or not the rights have been restored, right? I mean, depending on when they lost the rights. Correct. And at the end of their process with community supervision, it is a requirement that they're handed a certificate of their rights of restoration. So there are two bookends to this that make sure that the person involved with the criminal justice system in North Carolina is made well aware of their rights during that process. Now, that does not mean that somebody in between those two things wouldn't forget or might get confused. We acknowledge that. We acknowledge that in the record. I understand that. But my point is only to say that to get from there, you then have to get a DA to find this person who didn't know and then choose to prosecute them. That also then needs to apparently generate news coverage. That then needs to get to a voter. Wasn't there a lot of news coverage last time? I can't remember which DA it was, but there were some honest mistake prosecutions, and I thought they were pretty heavily publicized. Prior to bringing suit, and it is cited in the complaint, there were news articles about Alamance County, I believe, had 12, and another county, I believe, had four. Those were the news articles. And that all happened prior to the complaint being brought. I know, but if it happens, it would probably be even more newsworthy that it happens in the future, given that everybody thinks the law no longer allows for that. I bet that will be newsworthy. I understand. Beyond that, that— All right, Mr. Steele. Will, for a while, I guess it's your colleague will come back to talk to us and not you, but it's been a pleasure to have you talk to us. And we'll now hear from Mr. Youngblood. I'm sorry. Yeah, I apologize, Your Honor. She has six minutes to address— I see what you're saying, so let's proceed on. I'm sorry. Thank you, Your Honor. I took that to be the rebuttal time that that would be in. Good morning, Your Honor. May it please the Court. I'm Elizabeth Kern O'Brien from the North Carolina Department of Justice, and I represent North Carolina's 42 elected district attorneys, and I'm here to discuss plaintiff's arbitrary enforcement due process claim. The concern of my clients is that plaintiffs have asked this court and the district court found that we can convert exercises of prosecutorial discretion made transparent through letters that the district attorneys wrote to the state board investigator into a due process violation. And that's a misunderstanding of both prosecutorial discretion and the vagueness doctrine. Do they need to prevail on both? I mean, if there was an equal protection basis here and not a due process, would the relief still be granted? I don't believe they need to prevail on both. To go to your question that you asked, Mr. Estita, as to why we are here, this is why the district attorneys are here. No, I'm focusing on that one first to understand, you know, because we focused, I guess, primarily on the equal protection aspect of it. I will admit to me it's a little clearer than it is due process, but I want you to use your time wisely here in that regard. But I'm just wondering, do we need to do both on it? But go to the question now that you think you want to answer previously. I was trying to address the question that you asked, Mr. Estita, as to why the state is here. And this precise issue is why the district attorneys are here. They're very troubled by the district court's decision that delineated and looked very closely at prosecutorial charging decisions they made. But the remedy is what I'm saying. The remedy here that was given was effectively an injunctive relief, which means you can't enforce or you can't prosecute under the previous law. If you think about the remedy only, this is a district court. I'm not minimizing the role of a district court, and certainly they can write opinions. Their opinions can be persuasive to the court. But in terms of stare decisis or something that we are bound by, it seems to me the remedy here is do you disagree with the remedy that was given by the district court? The injunctive relief keeping you from prosecuting under the first statute. Do you disagree with that? I disagree to the extent I don't think the remedy is necessary, based on my analysis. That being the case, but understand, you say to the degree that it's necessary. Maybe not, but given it, does it change anything? In other words, do you think you should be able to prosecute under prior law? I think that the way that the statute was amended provides that those prosecutions could occur. That's the point we're making. That's exactly what you just admitted. You just presented why it's not moved. You say they could occur, and so if they can occur, if we don't uphold the district court, then essentially you're saying you should have two statutes you can prosecute under. One, the crimes committed before the so-called new law, which is just the amendment of it, and those after it, because that's not retroactive. Is that your position? Our position is that the plaintiffs in this case are not voters who could bring that claim. The interest of these plaintiffs, as Mr. Steed explained, is different. But so you do want the right to be able to prosecute under the unamended version of the law for cases where there's no mens rea. That is not why we're here. But do you want to be able to do that or not? That's not a question. Do I believe that the district attorneys want to be able to prosecute cases under the old law? Let me rephrase it. Are you arguing that? Are you arguing that point? I want to know. I'm not sure I understand. Could you please? I just want to know, is there anybody prepared to say that they would like to reserve the right to be able to prosecute under the unamended law for cases where there is no mens rea, where somebody had no intent to do the prohibited act? I have no evidence to support that anybody wants to do that. Okay. Is it your position that it is constitutional to prosecute people criminally for conduct that they did not intend to engage in? Because that seems controversial. Well, I believe that was the question before the amendment. It seems like a big question. We stand on our briefs as to why the law is constitutional. I don't think this was briefed, the question of how come just at the very threshold, why does anyone think it's okay to enforce a criminal law without any mens rea requirement? Well, I don't think that there's been any cases that say a strict liability crime is always unconstitutional. It's certainly hotly disputed. It is hotly disputed. I guess what I'm getting at, just to be clear, is I don't think the first, the problem with the unamended law seems to me to be less about vagueness, I think it pretty clearly doesn't require mens rea, and more about how come that's okay under the due process clause. Well, I think the district court, she said that the law did give fair notice of individuals of what is prohibited. It gave fair notice. Yeah, but that's a different question from do you have to intend to do the act that is prohibited. But it's okay, I'm sorry, I don't want to take up all your time. Well, I didn't prepare to answer that question, but it is my understanding of the law, and I see my time is running out. Let me ask you this. So, because you started off with the emails, so you have one, I guess, and I think it's at JA 1021, 21 Polk County. The prosecutor says, I cannot in good conscience recommending charging her criminally. That's discretion, right? Yes. All right. And then you have, I guess at Robeson County, JA 1022. It is our belief that the charges would require some showing of knowledge that each above listed individual rights to vote have been suspended. That's not discretion. That's the question of whether or not you can meet the elements. Discretion is whether or not we should prosecute, and then you got whether or not I can. And it sounds like the Robeson County prosecutor said, I can't because I can't meet the elements of the law. And so how is that? I mean, because you're making this arbitrary enforcement argument. How is that not? Well, Your Honor, these letters that you're referencing, these emails, we've got to look at what they were, the purpose of them. They were not written for litigation. They were not meant to serve as a legal interpretation. They were communications with investigators aimed at informing them about the real-world implications of the flaws. The systemic flaws with the notice provided to voters about their eligibility to vote. And while it says charges, I think the overarching theme of these letters is their concern about fairness, which is the same concern shared by plaintiffs about this law. The district attorneys share those concerns and convey them to the board. But I think this points out why the district attorneys feel that this finding by the district court is dangerous, because we're sitting here and we're looking at written communications that maybe inartfully were drafted and trying to figure out what the district attorney meant and why they made that decision. And our courts have shown restraint into doing that in many, many different instances. And to be clear, the district attorneys did not have to write these communications, and had they not written this down, this claim wouldn't exist. So it is troubling to the district attorneys that when they do have transparency about their decisions, they're going to be picked apart, and I think it has a chilling effect on prosecutorial discretion and transparency and preserving their independence and discretion in deciding who, when, why, where to prosecute. And that is the trouble that the district attorneys find with the district court's opinion. All right. Thank you very much for your argument. Thank you. This time we'll hear from you, Mr. Youngwood. Youngwood. Thank you, Your Honors. Good morning. May it please the Court, Jonathan Youngwood, Simpson, Thatcher, and Bartlett, for the plaintiffs and with my co-counsel from the Southern Coalition for Social Justice. Your Honors, I thought I might begin with what I think was your central question to the state's attorneys, which is, why are we all here? And I guess to us, we're here to defend the district court's ruling, but we sought that ruling even after the enactment of the new statute for very specific reasons, and it's the reasons that I think were highlighted by your questions. The new statute is effective only for elections that take place after 2024. North Carolina has no statute of limitations on felony charges. That means any person who voted in a prior election and some day decides could be subject to this old discriminatory law could be prosecuted. The evidence in the record— Counsel, can I—I'm sorry to interrupt, but can I just ask you, did anybody on the plaintiff's side of things look into North Carolina law on the effect of an amendment to a criminal statute and whether that— So, Your Honor, my simple read of the statute, I may be wrong, is that it didn't say it's effective going forward. It said it's effective to acts going forward, and so that it specifically said, I believe I'm quoting correctly from Section 50 of SB 747, it applies, and I'm quoting, to elections on or after that date. And so it did not repeal by implication the old law? I do not think it— Because North Carolina does have an implied repeal doctrine, but you don't think it would apply here? Let me be blunt. We didn't challenge that, and to be very clear, we're not challenging the new law here today that may be somebody else's lawsuit someday. I'm not here to do that. I'm challenging the old law. But what I think you have under the old law, and this, again, very much goes to why our clients, whose mission, whose core organizational mission is to foster voting, to foster voter participation, is if perhaps— Well, to be fair to the other side, they are concerned in terms of the breadth of the district court's order that deals both with equal protection and due process. And my question went to the question of do you need to show for both? In other words, if the equal protection claim survives, do we need to even get to the due process one? You do not, Your Honor. You do not. We seek one form of relief that actually relates to some of the mootness arguments. The relief we seek is for this 150-year-old law, effectively. I know the words have changed. But for this post-reconstruction law to be stricken down. And you can get there through due process. You can get there through due process through different arguments. And you can get there through equal protection, which may be the straighter line because I think, with respect, I've never really heard my opponents in the four-plus years of this case argue that this law wasn't enacted with a racial animus. It just seems like these are the kinds of things that you could work out. District attorneys seem to be concerned more with the due process aspect of it. You didn't need it. I'm not sure how much the equal protection, to not move there would be a problem. In any event, again, it's a district court opinion. The result doesn't seem to be something, although I'm not certain as to how the district attorneys, attorneys, or even the state feels about whether the old law still has effect if we were to reverse the district court. And it would seem to me that I would suppose the legislature, in amending this statute to add that, was seeking to try to cure this. And I don't know of too many cases that deal with retroactivity by implication. I gave you an example where the legislature actually repealed the statute, which would, in my opinion, would have been the more advisable thing to do, simply repeal the old one and enact this new law. And I would dare say you probably wouldn't be standing before us right now. So it seems like there's a simple outcome here, and I think we try to avoid writing too much or putting too much on the paper where we can get to the point and bring together issues like this. And there may be other issues for another day, but if we resolve this under the equal protection basis, at least from what I understand, that is sufficient to uphold the district court. I'm not even sure we are going to do anything more than that with it. I don't know what we would do with it, but that sounds like to me that would end it. I think, Your Honor, the district court gave you multiple grounds for her reason to permanently enjoin any enforcement of the statute and to permanently wipe the statute from the books. And if you reach one, you don't need to reach the others. The result, the relief we seek, the relief we seek is simply the enjoining of the enforcement of this statute that it's stricken from the books. That would do it. Frankly, Your Honors, we'll write the decision as you see fit, and I'm not obviously prejudging which way you might write it, but if you accept the equal protection, you needn't go on to due process. If you accept the due process, you wouldn't need to go on to equal protection. What makes it even more so, you know, something that you wonder why we're here, because I think the other side would agree, and unfortunately they didn't reserve the rebuttal to address this further, but I think they would agree that DAs are not likely going to be prosecuting people who don't have that knowledge or so, because it's going to be very difficult to get a prosecution, at least it appears to be. That's at least the consensus view of the DAs, is that they're not going to be able to get a prosecution if you can't show that they were aware of this. It's interesting, because North Carolina does allow for felony, those who have been in prison and felony convictions, to regain the right to vote. There's a process they go through, and then you get some sort of a certification for it. So we're talking about a very limited class of people, and it's not inconceivable, in fact it sounds plausible, that you could fulfill those conditions and not know it, that you can vote. And so that SIENTA requirement is fairly important. It is important here. But it sounds like the legislature got it and went and they did it. And the only reason we're looking here is, well, what are you going to do about the old law, which they didn't do anything with the old law. And it sounds messy to me. I don't know how it got to the legislature to do it, but it would be interesting to know if you could just simply go to the legislature and say repeal the old law, then we wouldn't be wasting North Carolina's money and time and have these kind of cases where it looks like that outcome would at least satisfy the constitutional concerns that are here. Your Honor, I certainly will not presume to speak for any legislature, North Carolina or otherwise. What I will say is that the words in the statute seem quite purposeful to me, that they only apply post-2024 elections going forward. So I put that point. While I hope it is unlikely that there will be future prosecutions under the old law, I hope that. Counsel here can't tell you there won't be. In fact, I think they told you there could be. Counsel here represents the current DAs. Obviously, people will be successors to those positions. The reason we're here is I actually think having two laws out there in some way strengthens the reasons, the original standing, and we're not here on a standing argument, we're here on a mutinous argument, and there are significant procedural differences, but almost strengthens the argument because you had an old law that we pled was both a violation of equal protection, confusing under due process, didn't provide standards. Now you have two laws, and as your Honor said, if there were a prosecution under the old law, in the face of a new law that says you can't do it, I can't predict what the press will do either. I can't predict what anyone will do. I think the confusion that you'd have would be even more so because perhaps today our clients can say to people, in future elections you're good. You're not going to have a foot fault. You're not going to have a technical fault and wake up with a felony on this topic. But then you have an old prosecution, and how do you even begin to explain to people how that could be? I think in some ways the need to strike down this law on the voter confusion issue is even stronger today than when we first brought the case because you've got these two confusing laws. Your Honor, I wish we could make some deal that there wouldn't be future prosecutions. The only way we know it is the way we pursued it in the district court, which was to seek an order, making it clear. We hope the case wouldn't be appealed. It was appealed, and so we're taking up your time this morning. Let me ask you a quick question about his argument regarding you all being an organization and its move as it relates to the institute. Thank you, Your Honor. Thanks for the question. I actually think first, high level, this case bears very little difference than this court's decision in Republican National Committee versus North Carolina State Board of Elections, which also post-recent Supreme Court precedent concerned the question of organizational standing. So I think that case deals with the whole concept of what is the status of organizational standing in this circuit in recent years, and that's the 2024 decision. In terms of what our continued interest is as organizations, it goes back to what is the core organizational mission of our clients, and the core organizational mission of our clients is to foster voter participation by eligible voters. And the concern they had, the reason they brought the case originally in 2020, in advance of that election, was the confusion that is sowed by a statute that seems both standardless, that goes to due process, but also a violation of equal protection, and the concept that you mean I mistakenly voted and now I've committed a felony. That concern continues even to future elections, although the old law applies to prior ones, because of the continued risk of future prosecutions. And I understand the concept of speculative has been raised. That is really more a concept that belongs in the standing jurisprudence than in the mootness jurisprudence. But we have a history here, and actually you can look at other mootness and standing cases, both in this court and in the Supreme Court, and they are often judged to be speculative when the law has never been enforced. Here we have a very detailed history of enforcement. Your Honor has raised some of the more prominent ones. But during the time period that led to the record in this case, there were – I'm trying to get the exact figures, Your Honor. There were – this is based on the record, and this is in the joint appendix. Well, it's ECF 97-1. The record showed 32 indictments, 28 convictions, five deferred prosecution agreements resulting in investigations from 16 different counties. There is in the record a spreadsheet that makes it very clear that there were 200 active cases as of the time discovery was conducted in this case back in 2022. That's – I'm sorry, I actually have it. It's JA 1341 to 1367. All of those cases could be live. All those people could be live. It is true that since we filed this case, there have not been any public prosecutions. But I emphasize the since we filed. We have vigorously litigated this case. We've enjoyed an injunction for more than a year on this case. And were this court not to support and affirm the district court's order, it would basically be a message that it is okay to go back and prosecute these cases. At the end of the day, the upshot of the district court's conclusion is that this statute violated both equal protection and due process. It is agreed that you only need one of those. But at least in terms of how we say these things when she held that declared the challenge statute is unconstitutional and enjoined enforcement of that statute, I guess we all sort of feel there are two statutes here. But really, they amended it. And you don't have two statutes if you amend the statute. You have an amended statute. And that old one, if there was an old one, it just doesn't follow. It's not clean. And there's a clean way to do it, particularly in terms of the representation of the other side. It just seems to me they should have just repealed the other one and enacted this one, and, again, we wouldn't be here. I know that's a simplistic way. If you want both, you need to basically say I want both, and then you then would have the other one still there. But I think we've got this issue pretty much on a clear understanding at this point. My colleagues, I'll ask if you have further questions. Okay. Thank you, Your Honor. I'll cede my time. Thank you. All right. We'll thank all counsel for your argument today. We'll come down and greet counsel and proceed to the second case of the day.
judges: James Andrew Wynn, Pamela A. Harris, DeAndrea Gist Benjamin